## J. D. BRADLEY v. AARON PIKE.

### Evidence.   Contract.

The defendant executed a promissory note in consideration of the payee's agreeing, by a written contract made cotemporaneously with the note and as part of the same transaction, to give up to the defendant his contracts for furnishing cloth boards to certain manufacturing companies, "for the term of two years;" but the contracts to be given up were not definitely described in the written agreement. The defendant's evidence, introduced in defence to a suit upon the note tended to show that the payee had at the time, in fact, no contracts with the companies which he could give up, and that the note was therefore without consideration, and fraudulently procured. The plaintiff offered to show, by parol, that he had contracted with the companies to furnish them a certain amount of cloth boards,—to one company "within a reasonable time" and to the other at a specified time which had elapsed when the note was given; that although he had not performed the contracts in time, yet that the companies were still willing, at the time the note was given him by the defendant, to receive the boards of him: and further offered to prove various facts to show that the defendant must have known the situation of these contracts when he gave the note, and to show that the parties in their written agreement, executed with the note, referred to these contracts as the ones to be given up by the payee; Held, that this evidence was admissible to identify the contracts referred to in the written agreement executed cotemporaneously with the note.

Held, also, that the plaintiff's evidence, tending as it did to show that the companies were still willing to receive the cloth boards at the time of the agreement between the defendant and payee of the note, did not show contracts so past and abandoned to prevent the proper use of the words "contracts" in describing them; that they still existed in a sense which might prove advantageous to the defendant, and so that he might naturally refer to them by that term, even though it might be doubtful whether he could legally enforce them.

The phrase "for the term of two years" in the written agreement of the payee to the defendant, held not a description of the contracts to be given up, but as indicating the period during which the payee of the note was to retire in the defendant's favor from the business of furnishing cloth boards to the companies.

ASSUMPSIT on a promissory note for $82.00, made by the defendant March 30th, 1854, payable to one Wm. S. Bennett or bearer on the 15th day of July, 1854, and endorsed by the payee.

The case was referred and the referee reported the following facts : — This action was brought in the name of J. D. Bradley

for the sole purpose of collection, Wm S. Bennett, the payee, being the owner of the note in suit and the only person in interest. At the time the note was given by the defendant to Bennett, and as part of the same transaction Bennett made and delivered to the defendant a written agreement referring to the note in question, which was as follows:

" An agreement by and between Wm. S. Bennett of the first part, and A. Pike, of Searsburgh, of the second part aforesaid, that Wm. Bennett agrees to give up his contract at the Bay State mills at Lawrence, which he says he gets ten dollars and fifty cents per thousand for five inch cloth boards, also twelve dollars for seven inch, also his contract at Middlesex mills in Lowell, which he says is ten dollars and fifty cents for five inch and twelve dollars and fifty cents for seven inch, for the term of two years, for the following described note, given March 10, 1854, for the amount of eighty-two dollars payable the 15th of July, 1854." (Signed)          " WM. S. BENNETT."

The referee further found that when the note was given. Bennett had no contract with those mills, except an order for forty thousand boards from the Pay State mills, and for twenty-five thousand from the Middlesex mills, and that there remained only twelve to fifteen thousand boards to be supplied on the twenty-five thousand order; that the defendant went to the mills in June, 1854, and they refused to receive any boards upon any contract with Bennett; that the Middlesex mills after much solicitation received about ten thousand boards which the defendant then had with him, but refused to take any more, and at the same time the Bay State mills refused to take any boards and declined to recognize any contract with Bennett; that at this time the defendant had at home thirty thousand boards which he has not been able to dispose of.

The referee further found that Bennett had for several years previous to April, 1854, been furnishing five and seven inch cloth boards to the Middlesex and Bay State mills under a parol contract, to be paid ten dollars and fifty cents per thousand for five inch boards and twelve dollars per thousand for seven inch boards; and the plaintiff offered to prove, before the referee, by the testimony of Bennett, that in September, 1853, he contracted

with the Middlesex mills to deliver to them, in a reasonable time, twenty-five thousand five inch cloth boards for which they were to pay him ten dollars and fifty cents per thousand; also, that in October, 1853, he made a contract with the Bay State mills, to deliver to them twenty thousand five inch and twenty thousand seven inch cloth boards by the 10th of December, 1853, for which they were to pay him ten dollars and fifty cents and twelve dollars per thousand respectively; that in February and in March. 1854, he had not fulfilled either of these contracts, but that in each of those months the mills were willing to receive the boards under the contracts. Also the plaintiff offered to prove in the same connection, by a written contract to that effect, that in pril, 1853 one Davenport agreed to furnish Bennett with fifty thousand cloth boards in November, 1853, and fifty thousand in May, 1854, one half of them five, and the other half seven inches in width, for eight dollars and fifty cents per thousand; and further to prove by a written contract to that effect that the defenda it entered into an agreement with Davenport for the delivery of the same quantity of boards at the same time, place and price; that the defendant did not fulfill his contract with Davenport, (only two thousand poor boards being delivered as stated below) and consequently Davenport could not fulfill his with Bennett, nor Bennett with the mills; that on the 5th day of February, 1854, the defendant and Davenport met Bennett at Brattleboro for the purpose of arranging the matter of damages for the non-delivery of the boards by the defendant to Davenport and by Davenport to Bennett. The plaintiff also offered to prove by the written contract to that effect that at this meeting it was agreed that Bennett should discharge Davenport from his contract and give up his (Bennett's) contract with the mills to the defendant and one Corse, and that the defendant and Corse should pay Bennett one hundred and twenty-five dollars; and that part of the consideration of the note in suit was this discharge of he defendant from his contract to deliver the boards.

To the admission of this evidence so offered by the plaintiff, or any part of it, the defendant objected; the objection was overruled and the evidence admitted; and the referee found and reported the facts substantially as above offered to be proved. The

referee found that about two thousand poor boards were fur-
nished to Bennett by the defendant and Davenport under their
contracts to deliver him boards, which Bennett disposed of to the
mills about the 1st of March, 1854, and a few days afterwards
told the defendant what he had done ; that the value of these
boards was taken from the one hundred and twenty-five dollars
above mentioned, and the note in suit was given for the balance.

The referee reported the sum of one hundred and five dollars
and twelve cents due upon the note and found the plaintiff enti-
tled to recover that amount.

The county court at the September Term, 1859, REDFIELD,
Ch. J., presiding, rendered judgment upon the foregoing report
for the plaintiff, to which the defendant excepted.

*Davenport & Haskins*, for the defendant.

*Bradley & Kellogg* for the plaintiff.

ALDIS J.   The note in suit was given at the time that the
plaintiff executed the agreement of March 30, 1854, and in con-
sideration of the plaintiff's thereby agreeing to give up to the
defendant his contracts for cloth boards with the Bay State mills
at Lawrence and the Middlesex mills at Lowell, Mass.

The defendant's evidence tended to show that there were no
contracts at all between the plaintiff and the mills which the
plaintiff could give up — and so a total failure of consideration
and fraud.

The plaintiff offered to show by parol, that in September,
1853, he contracted with the Middlesex mills to deliver them
twenty-five thousand cloth boards ; and in October, 1853, he con-
tracted with the Bay State mills to deliver them forty thousand
cloth boards by the 10th of December, 1853 ; and that although
he had not performed these contracts, yet the mills were willing
to receive the cloth boards of him in March, when he agreed to
give up his contracts with the mills to the defendant ; that the
defendant must have known the situation of these contracts when
he gave the note ; and various circumstances growing out of the
relation of the parties to each other, and of their dealings with

each other and the mills, to show that the parties, by their agreement of March 30, 1854, must have referred to these contracts as those which were to be given up. Is this evidence so contradictory to the agreement of March 30, 1854, or variant from it, as to be inadmissible ?

The agreement refers to the contracts to be given up in very general terms—specifying only the mills with which they were made and the prices which the plaintiff said he was to get by them for cloth boards. Whether the contracts were by parol or in writing—when made—for what amounts, for what period of time, when to be performed—and any other conditions and terms which might form a part of them, are not mentioned in this agreement. It is obvious that to identify the contracts so to be given up, resort must be had to parol testimony. Any parol evidence tending to show what the contracts were which were meant, would therefore be admissible—so long as it did not conflict with the description given in the agreement. The word " contracts" should be understood in its popular sense, as applicable to any understanding between the plaintiff and the mills by which they understood that he was to deliver, and they to receive, cloth boards, at the prices named in the agreement. The evidence of the plaintiff tended to show a contract with the mills upon which they were still willing to receive cloth boards. If upon his claim of the then existing state of these contracts, he had acted and taken cloth boards to the mill companies, it is reasonable to believe that they would have received them. Whether he could have compelled them to receive them, or not, does not appear. If there had been a forfeiture on his part which they were willing to waive upon his proceeding to perform in the future, such a state of things in regard to his contracts with them would still entitle them in ordinary language to be called contracts. We think therefore, the evidence did not show contracts so past and abandoned as to prevent the proper use of that word in describing them ; and that the contracts still existed in a sense which might prove advantageous to the defendant, and so that he would naturally refer to them by that term even though it might be doubtful whether he could legally enforce them.

The phrase " for the term of two years," we do not under-
stand as descriptive of the c ntracts to be given up, and as
meaning that they are to be in force for that time for the defend-
ant's benefit ; but as indicating the period during which he is to
retire from the furnishing of cloth boards to the mills, and give
up to the defendant the privilege of furnishing them. If this
construction could be deemed doubtful upon the words of the
agreement—the parol evidence clearly shows that to have been
the intention of the parties.

As therefore we do not find the parol evidence conflicting
with or changing the sense of the written agreement, but only
showing to what it was intended to apply—explaining and iden-
tifying the subject matter of it by the attending circumstances—
it was admissible upon familar principles of law. It is unnec-
essary therefore to consider whether it was admissible upon the
other grounds urged by the plaintiff.

Judgment affirmed.